UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GINA MARTIN	CIVIL ACTION

VERSUS	No. 24-1645

NATIONAL INTERSTATE INSURANCE
COMPANY, ET AL	SECTION I

### ORDER AND REASONS

Before the Court is a motion[1] *in limine* filed by defendants National Interstate Insurance Company, Thompson Carriers, Inc. ("TCI"), and Micah Cunningham ("Cunningham") (collectively, "defendants") to exclude the testimony of David J. Barczyk, D.C., an expert whom plaintiff Gina Martin ("plaintiff") intends to call at trial.[2] Plaintiff filed a response in opposition.[3] Defendants filed a reply.[4] For the reasons set forth below, the Court grants the motion in part and denies it in part.

### I. BACKGROUND

This case arises from a January 2023 automobile accident.[5] In her complaint, plaintiff alleges that Cunningham was driving a vehicle behind plaintiff within the course and scope of his employment with TCI when he suddenly crashed his vehicle into the rear of plaintiff's car.[6] Plaintiff alleges that she suffered bodily injuries

---

[1] R. Doc. No. 32.
[2] R. Doc. No. 31, at 1.
[3] R. Doc. No. 33.
[4] R. Doc. No. 34.
[5] R. Doc. No. 1-4, ¶ 4.
[6] *Id.* ¶¶ 5–6.

including to her head, neck, back, chest, and legs as a result of this accident.[7] Accordingly, she filed a petition for damages in state court.[8]

After the case was removed to this Court,[9] the parties filed into the record a judicial confession pursuant to article 1853 of the Louisiana Civil Code.[10] Pursuant to article 1853, this confession "constitutes full proof against the party who made it" and "it may be revoked only on the ground of error of fact." The confession in this case states that the January 2023 automobile accident was caused by the sole negligence of Cunningham and that plaintiff has no fault, comparative or otherwise, for the subject accident.[11] It further states that Cunningham was acting in the course and scope of his employment with TCI at the time of the accident, and, for that reason, TCI is vicariously liable for Cunningham's negligence.[12]

Since defendants dispute that plaintiff's injuries were caused by the subject accident, plaintiff retained Dr. David J. Barczyk ("Dr. Barczyk") as an expert witness in the field of biomechanics in order to opine on the cause of plaintiff's injuries.[13] Plaintiff also retained Dr. Barczyk as an expert in accident reconstruction because defendants had not yet confessed to Cunningham's liability.[14] Dr. Barczyk's CV[15] attests that he was originally trained as a chiropractor, as he received a doctor of

---

[7] *Id.* ¶ 8.
[8] R. Doc. No. 1–4.
[9] R. Doc. No. 1.
[10] R. Doc. No. 29.
[11] *Id.* ¶ 1.
[12] *Id.* ¶ 2.
[13] R. Doc. No. 33, at 2.
[14] *Id.* at 2 n.1.
[15] R. Doc. No. 33-1.

2

chiropractic degree.[16] Dr. Barczyk is licensed in Louisiana as a chiropractor and continues to practice as a chiropractor in the office that he established.[17]

In addition to his chiropractic training, Dr. Barczyk has postdoctoral training in neurology and training in crash biomechanics. Dr. Barczyk's CV represents that he has received over 350 hours of neurological training and is a diplomate of the American Chiropractic Neurology Board.[18] With respect to his training in biomechanics, Dr. Barczyk's CV represents he has several certifications in biomechanics and has attended over a dozen trainings.[19] Dr. Barczyk's CV also states that he has given a number of lectures on topics in biomechanics.[20]

Dr. Barczyk produced two expert reports regarding plaintiff's injuries.[21] The first report, dated December 3, 2024, sets out plaintiff's treatment history since the accident.[22] It then describes her previous medical history and the results of a physical examination of plaintiff that Dr. Barczyk performed.[23] After discussion of the accident, the report then has a section entitled "Mechanism of Injury," which describes the force exerted on the cervical spine, the lumbar spine, the brain, and the shoulders.[24] The section outlining the mechanisms of injuries is followed by a section

---

[16] *Id.* at 1.
[17] *Id.*
[18] *Id.* at 2.
[19] *Id.* at 2–4.
[20] *Id.* at 5–8.
[21] R. Doc. Nos. 32-3, 32-4.
[22] R. Doc. No. 32-3, at 1–2.
[23] *Id.* at 2.
[24] *Id.* at 3–4.

3

addressing occupant risk factors and Dr. Barczyk's methodology.[25] The report concludes with a summary, in which Dr. Barczyk states that plaintiff's injuries to her cervical and lumbar spines, her shoulder, and foot are causally related to the accident.[26] In addition, Dr. Barczyk states that the accident produced an injury mechanism for plaintiff's brain.[27] Appended to the report is a document[28] listing the records that Dr. Barczyk reviewed to prepare for the report as well as a reference list[29] of 66 sources. The second report, dated March 18, 2025, is identical to the first report with respect to its discussion of the biomechanics of plaintiff's accident and its conclusions on medical causation.[30] The second report differs from the first by adding a discussion on accident reconstruction and safety.[31]

Defendants filed the instant motion *in limine* to exclude Dr. Barczyk's testimony altogether.[32] With respect to Dr. Barczyk's medical conclusions, defendants claim that that Dr. Barczyk is unqualified to testify to medical causation, that his methods are unreliable, and that his testimony would be cumulative in contravention of Federal Rule of Civil Procedure 403.[33] With respect to Dr. Barczyk's reconstruction of the accident, defendants contend that such testimony should be excluded because

---

[25] *Id.* at 4–6.
[26] *Id.* at 6.
[27] *Id.*
[28] *Id.* at 8.
[29] *Id.* at 9–12.
[30] *See* R. Doc. No. 32-4, at 4–8.
[31] *Id.* at 2–4.
[32] R. Doc. No. 32-1, at 1.
[33] *Id.*

4

defendants have confessed that Cunningham's sole negligence was responsible for the accident.[34]

## II. STANDARD OF LAW

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing its admissibility. *See Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). "District courts have broad discretion to determine the admissibility of expert testimony . . . ." *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 425 (5th Cir. 2024) (internal quotation marks and citation omitted).

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179

---

[34] *Id.*

5

(5th Cir. 2009) (quoting Fed. R. Evid. 702)). "To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (cleaned up) (internal quotation marks and citation omitted).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court provided an analytical framework to determine the admissibility of expert testimony pursuant to Rule 702. This framework applies to both scientific and non-scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). As *Daubert* explains, federal district courts must perform a screening function to ensure both the reliability and helpfulness of expert evidence. *See* 509 U.S. at 589.

The *Daubert* framework principally consists of a two-part inquiry. *See id.* at 592; *see also Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 834 (E.D. La. 2019) (Vance, J.). First, the court must ascertain the reliability of the expert testimony. *Douglas*, 431 F. Supp. 3d at 834. Reliable expert testimony reflects expert knowledge, which encompasses known facts or ideas inferred from known facts, rather than "subjective belief or unsupported speculation." *See Daubert*, 509 U.S. at 590 (explaining that the knowledge requirement of Rule 702(a) "establishes a standard of evidentiary reliability"). Expert knowledge derives from reasoning or methodology that is valid—*i.e.*, it actually supports what it purports to show. *See id.* at 590 n.9, 592–93.

The test for determining reliability is flexible and can adapt to the particular circumstances of the testimony at issue. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 585 (5th Cir. 2003). *Daubert* itself provided an inexhaustive list of factors. *See* 509 U.S. at 593–95. These factors include: (1) whether the technique in question has been or can be tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the scientific community. *Bocanegra*, 320 F.3d at 384–85. A court enjoys "broad latitude" to apply these or other factors that it determines to be "reasonable measures of reliability in a particular case." *Kumho*, 526 U.S. at 149, 153.

At the second step, the district court must ensure that the expert testimony would be helpful to the trier of fact. *See Douglas*, 431 F. Supp. 3d at 834. Helpful expert testimony is relevant beyond the sense that all evidence must be relevant pursuant to Federal Rule of Evidence 401. *See Bocanegra*, 320 F.3d at 584. Helpful expert testimony is relevant also in the critical sense that it must "fit" the purpose for which it is employed. *See Daubert*, 509 U.S. at 591. Expert testimony fits when the reasoning or methodology underlying it "properly can be applied to the facts in issue" because such reasoning or methodology has a "valid scientific connection to the pertinent inquiry." *See id.* at 592–93.

In addition to fit, expert testimony must be helpful insofar as it provides insight beyond that which the jury could glean for themselves. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). If "the jury could adeptly assess [the

7

evidence] using only their common experience and knowledge," then expert testimony would be unnecessary and therefore properly subject to exclusion. *See id.*; *see also Vogler v. Blackmore*, 352 F.3d 150, 155 n.5 (5th Cir. 2003).

To determine the admissibility of expert testimony pursuant to Rule 702, courts apply a preponderance-of-the-evidence standard and are not bound by the rules of evidence—except those rules concerning privileges. *See Daubert*, 509 U.S. at 592 n.10. However, a court's gatekeeping role does not supplant the adversarial process—cross-examination and presentation of contrary evidence are the appropriate means of attacking shaky but admissible testimony. *See Douglas*, 431 F. Supp. 3d at 835. Likewise, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (citation omitted). Even if expert testimony is admissible pursuant to Rule 702, courts must also consider whether the testimony is admissible in accordance with the other applicable rules of evidence, especially Federal Rule of Evidence 403. *See Daubert*, 509 U.S. at 595; *Douglas*, 431 F. Supp. 3d at 835.

### III. ANALYSIS

As an initial matter, the Court will not consider the admissibility of Dr. Barczyk's testimony on accident reconstruction. In her opposition, plaintiff explains that it will be "unnecessary" for Dr. Barczyk to testify as to his reconstruction of the accident in the wake of defendants' judicial confession that Cunningham's negligence

was solely responsible for the accident.[35] Since plaintiff does not seek to introduce that portion of the disputed expert testimony, [36] the issue is moot.

With respect to the admissibility of Dr. Barczyk's testimony concerning medical causation, the Court agrees with defendants that such testimony is not admissible pursuant to Federal Rule of Evidence 702. However, the Court concludes that Dr. Barczyk's testimony should not be excluded altogether as defendants request. Dr. Barczyk's testimony regarding injury mechanisms in automobile accidents generally may be helpful and reliable for the purposes of *Daubert* and is therefore admissible pursuant to Rule 702. The Court will first address Dr. Barczyk's qualifications. Second, the Court will address the reliability of Dr. Barczyk's testimony.

### a. Dr. Barczyk's Qualifications

District courts must assure themselves that a proffered expert is qualified to give the relevant expert testimony. *See Cooks*, 589 F.3d at 179. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Van Winkle v. Rogers*, 82 F.4th 370, 379 (5th Cir. 2023) (citation omitted). Rather, Rule 702 requires only that the proffered expert possess enough expertise "to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Hicks*, 389 F.3d at 524. Since "[e]xperience alone can provide a sufficient foundation for expert testimony," *Van Winkle*, 82 F.4th at 379, the lack of a formal

---

[35] R. Doc. No. 33, at 2 n.1.
[36] *Id.*

9

degree in a field does not necessarily disqualify a proffered expert. Similarly, "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (citation omitted). The extent of a proffered expert's expertise or specialization in a given area "bear[s] chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Van Winkle*, 82 F.4th at 379 (citation omitted); *see also Wen Chyu Liu*, 716 F.3d at 169.

Plaintiff proffers Dr. Barczyk as a qualified expert in chiropractic medicine and biomechanics.[37] The Court finds that plaintiff has established that Dr. Barczyk is qualified accordingly. With respect to his expertise in chiropractic medicine, Dr. Barczyk has a doctoral degree in chiropractic medicine, is a board-licensed chiropractor, and has practiced chiropractic medicine since 1994.[38] Altogether, Dr. Barczyk assuredly qualifies as an expert chiropractor.

Although Dr. Barczyk does not have a formal degree in biomechanics, he has extensive training. His CV attests that he has attended over a dozen trainings in biomechanics and has attained several certifications.[39] This training is sufficient to qualify Dr. Barczyk as an expert in biomechanics. *Accord Chatelain v. Akin*, No. 15-cv-5747, 2018 WL 3063118, at *3 (E.D. La. Feb. 26, 2018) (Morgan, J.) (finding that Dr. Barczyk was qualified as an expert in biomechanics); *Copell v. Arceneaux Ford, Inc.*, 322 So. 3d 886, 892–93 (La. Ct. App. 2021) (same).

---

[37] *Id.* at 5–6.
[38] *See* R. Doc. No. 33-1, at 1.
[39] *See id.* at 2–4.

Although plaintiff has shown that Dr. Barczyk is an expert qualified in chiropractic medicine and biomechanics, plaintiff must ultimately prove that, by virtue of Dr. Barczyk's qualifications in those fields, Dr. Barczyk is qualified to provide the medical opinions outlined in his reports. *See Chatelain*, 2018 WL 3063118, at *3 ("Additionally, the expert's qualifications must relate to the testimony the expert witness provides." (cleaned up) (citation omitted)). The Court finds that plaintiff has not fully carried her burden in this respect.

The question before the Court is whether Dr. Barczyk is qualified to provide opinions on medical causation. In *Carlson v. Bioremedi Therapeutic Systems, Inc.*, the Fifth Circuit addressed whether a chiropractor was qualified to provide opinions on medical causation. 822 F.3d 194, 200 (5th Cir. 2016). The Fifth Circuit noted that the chiropractor did "not possess an advanced degree in a field of research ancillary to the fields of medicine he testified about, such as in podiatry, endocrinology, or nephrology." *Id.* However, the Fifth Circuit suggested without deciding that the chiropractor "may [have] be[en] well-suited to provide expert testimony about the musculoskeletal system," although "there [was] no evidence to suggest he [was] similarly qualified to testify about any other field of medicine." *See id.*

In *Carlson*, the Fifth Circuit acknowledged that "[a] medical degree is not a prerequisite for expert testimony relating to medicine." 822 F.3d at 200. But the Fifth Circuit also referenced circumstances in which those lacking a medical degree could qualify as an expert. For example, scientists with PhDs may be qualified to testify about fields of medicine ancillary to their field of research. *See id.* Contrarily, a

11

proffered expert who lacks a medical degree and is not involved in making medical diagnoses or ordering medical tests or studies was not qualified to opine on medical causation. *See id.*

Plaintiff does not cite any case holding that a chiropractor could testify to medical causation. And the Court's own research uncovered few cases on point. For example, the District of New Jersey recently held that a chiropractor was qualified to offer opinion testimony as to the cause of the plaintiff's injuries. *See Faragalla v. Otundo*, 626 F. Supp. 3d 783, 787 (D.N.J. 2022). These cases suggest that chiropractors may be qualified to opine on medical causation at least in certain circumstances. *See, e.g., Saiz v. Jerome*, No. 23-cv-35, 2024 WL 3297156, at *3 (D. Colo. Apr. 9, 2024) ("So long as Dr. Johnston's opinions remain within the realm of the cause, nature, and treatment of injuries with which chiropractors typically deal, he is qualified to offer them."); *Sheng v. Bissonnette*, No. 17-cv-3864, 2019 WL 2329362, at *2 (S.D. Ind. May 31, 2019) ("[C]hiropractors are not prohibited from testifying about medical issues or causation in all circumstances."); *Harmanson v. Ryan*, No. 15-cv-179, 2016 WL 7212956, at *1 (E.D. Tex. Mar. 23, 2016) (stating that nothing led the court to believe that a chiropractor was testifying outside the limits of his expertise by expressing an opinion on what would usually cause plaintiff's injuries); *Delgado v. Unruh*, No. 14-cv-1262, 2017 WL 957437, at *19 (D. Kan. Mar. 13, 2017) ("Dr. Stallbaumer is qualified to testify within the reasonable confines of his practice as a chiropractor."); *Price v. Nat'l R.R. Passenger Corp.*, No. 00-CA-304, 2000 WL 33349816, at *4 (W.D. Tex. Dec. 29, 2000) ("As Mr. Price's treating

chiropractor, Dr. French is qualified to testify regarding Mr. Price's general condition and the treatment he provided, as well as what types of trauma, in his experience, can cause those conditions.").

The Court finds that Dr. Barczyk is qualified to opine on the medical causation with respect to plaintiff's musculoskeletal injuries on the basis of his chiropractic expertise. Dr. Barczyk has extensive experience and significant training in chiropractic medicine. And the nature and cause of plaintiff's musculoskeletal injuries are "within the reasonable confines of his practice as a chiropractor." *See Delgado*, 2017 WL 957437, at *19.

However, the Court is not satisfied that Dr. Barczyk is qualified on the basis of his chiropractic expertise to testify as to the medical cause of plaintiff's alleged brain injury. Dr. Barczyk's CV attests that he has over 350 hours of experience in chiropractic neurology and is a diplomate of the American Chiropractic Neurology Board.[40] While this training is not insignificant, plaintiff has not met its burden of proving by a preponderance of evidence that it demonstrates Dr. Barczyk's qualifications to opine on the cause of plaintiff's brain injury.

Dr. Barczyk's training and diploma do not amount to a medical degree or a PhD. Further, plaintiff cites no evidence that Dr. Barczyk has conducted research with respect to the brain injury that plaintiff allegedly suffered or that, as part of his chiropractic practice, Dr. Barczyk diagnoses or treats brain injuries or orders diagnostic tests in connection with brain injuries. Accordingly, the Court cannot find

---

[40] R. Doc. No. 33-1, at 2.

that Dr. Barczyk is qualified to opine that the accident constitutes the medical cause of plaintiff's alleged brain injury.

With respect to Dr. Barczyk's expertise in biomechanics, the Court likewise finds that Dr. Barczyk is not qualified to opine on the medical cause of any of plaintiff's injuries on that basis. "Federal courts have found that biomechanical engineering experts like [Dr. Barczyk] are qualified to offer opinions on what injury causation forces are in general and how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury." *See Thomas v. Chambers*, No. 18-cv-4373, 2019 WL 1670745, at *4 (E.D. La. Apr. 17, 2019) (Vance, J.); *see also Roth v. Sentry Ins.*, No. 20-cv-1298, 2021 WL 3809090, at *3 (E.D. La. Aug. 26, 2021) (Ashe, J.) (explaining that "biomechanical engineers are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury" (citation omitted)). Accordingly, as an expert in biomechanics, Dr. Barczyk "may testify as to the amount of force he believes was generated by the subject collision and the observed effect of such force on a *hypothetical* human body in a comparable accident." *Ikerd v. Berkshire Hathaway Homestate Ins. Co.*, No. 23-cv-1330, 2023 WL 8282011, at *3 (E.D. La. Nov. 30, 2023) (Africk, J.) (cleaned up).

In sum, on account of his chiropractic expertise, the Court finds that Dr. Barczyk is qualified to opine on the cause of plaintiff's musculoskeletal injuries. However, he is not qualified to opine on the cause of plaintiff's brain injury. On

14

account of his expertise in biomechanics, Dr. Barczyk is qualified to opine on the effects of the force that the accident generated on the hypothetical human body but is not qualified to opine on the medical causes of plaintiff's injuries.

### b. The Reliability of Dr. Barczyk's Opinions

Having determined the scope of Dr. Barczyk's qualifications, the Court must now consider whether Dr. Barczyk's testimony on the issues on which he is qualified to opine—*i.e.*, whether the accident medically caused plaintiff's musculoskeletal injuries—would be reliable.[41] Reliable expert testimony "is the product of reliable principles and methods." Fed. R. Evid. 702(c). For an expert's opinion to be found to be the product of a reliable methodology, there must be "some objective, independent validation of the expert's methodology." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). In other words, "[t]he expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Id.* In addition, the expert's opinion must "reflect[] a reliable application of the principles and methods to the facts of the case." *See* Fed. R. Evid. 702(d).

Upon review of Dr. Barczyk's reports, the Court finds that Dr. Barczyk's sparse and cursory citations to references do not provide objective proof that he has reliably

---

[41] As explained above, *Daubert* requires that the district court also ensure that the testimony is helpful. Although defendants do not challenge Dr. Barczyk's opinion on helpfulness grounds, the Court nonetheless undertakes its obligation pursuant to *Daubert* and finds that Dr. Barczyk's testimony may be helpful. Its discussion on the biomechanics of rear-end collisions would provide the jury with insight beyond its common experience or knowledge. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

15

applied the methodology that he states he employed.[42] Therefore, the Court finds that Dr. Barczyk's opinions as to the medical causes of plaintiff's musculoskeletal injuries fail Rule 702's reliability standard. Accordingly, the Court declines to assess whether his methodology is reliable in the first instance.

Looking at the "Mechanism of Injury" section of his report,[43] the Court does not find any reference to the facts of this case. Dr. Barczyk's analysis initially describes the mechanism of injury as the result of "impact in a rear end crash."[44] But there are no additional facts regarding the specifics of the accident in this case. Consequently, for Dr. Barczyk's description of the mechanisms of injury to be an accurate description of the mechanisms of plaintiff's injuries in this case, it must be that every rear-end collision produces the same mechanisms of injury. There is no citation that establishes that proposition.

The defect of Dr. Barczyk's causal analysis is evinced by the methodology that he claims to have employed. In the "methodology" section, Dr. Barczyk outlines three essential elements of a causal connection.[45] He goes on to explain that "[s]everal factors play an integral role in causal association."[46] He then lists those factors:

> Details of occupant and environment (pre-crash, actual crash, and post-crash) have to be carefully evaluated. Characteristics of the occupant prior to trauma in question, such as, subject-specific injury tolerance, age, height, weight, gender, existing medical conditions, prior traumas,

---

[42] See R. Doc. No. 32-3, at 5; R. Doc. No. 32-4, at 6.
[43] R. Doc. No. 32-3, at 3–4; R. Doc. No. 32-4, at 4–6.
[44] R. Doc. No. 32-3, at. 3; R. Doc. No. 32-4, at 4.
[45] R. Doc. No. 32-3, at 5; R. Doc. No. 32-4, at 6–7.
[46] R. Doc. No. 32-3, at 5; R. Doc. No. 32-4, at 7.

16

and prior surgeries, are needed information for causal association. Factors nearer to the time of crash, such as, if occupant anticipated crash, braced muscles, the occupant's body position at time of crash, the seat in which occupant was residing, and actual car details (year/make/model, head restraints, car safety features), also aide in determining causation. Further information which will be factored in are the actual crash-related details including crash orientation, point of impact, vehicle dynamics (stopped/moving, lane, vehicle speeds, accelerating/decelerating, foot on brake, movement due to crash), safety systems (seatbelt, airbag, head contact to restraints), and occupant motion (motion due to impact and blunt impact with vehicle interior). Factors post-crash also hold integral information for causal association. These factors include occupant's position immediately after crash, pain (immediate/delayed, location of pain and its severity), and injuries (anatomical locations, symptoms and duration, treatments, and subsequent post-crash accidents).[47]

Although Dr. Barczyk himself identifies these factors and their relevance, nowhere in his report is it evident that he actually applied them to the facts of this case. Simply put, the Court finds that Dr. Barczyk's analysis is generalized and therefore any conclusion applying his analysis to the facts of this case is unreliable.

The Court also notes that, in the "Occupant Risk Factor" section[48] of his report, Dr. Barczyk identifies certain risk factors particular to plaintiff. He cites several sources for the risk factors that he identifies. However, his discussion in that section is terse, cursory, and conclusory. Dr. Barczyk does not explain how plaintiff's characteristics serve as risk factors in this case or the role they played in causing her injuries. Again, the Court is left with nothing but Dr. Barczyk's own assurances that he has reliably analyzed the risk factors. Such assurances are plainly not enough to

---

[47] R. Doc. No. 32-3, at 5; R. Doc. No. 32-4, at 7.
[48] R. Doc. No. 32-3, at 4–5.; R. Doc. No. 32-4, at 5–6.

17

establish the reliability of Dr. Barczyk's opinions on medical causation. *See Moore*, 151 F.3d at 276.

In sum, the Court finds that Dr. Barczyk's conclusions on medical causation are unreliable and therefore must be excluded. While the Court has focused on the reliability of Dr. Barczyk's opinions with respect to the medical causes of plaintiff's musculoskeletal injuries, the defect in Dr. Barczyk's analysis which renders these opinions unreliable equally characterizes his opinion as to the cause of plaintiff's alleged brain injury. Accordingly, that opinion is also excludable as unreliable pursuant to Rule 702. However, the Court will not exclude Dr. Barczyk's general discussion on the mechanisms of injury typically associated with rear-end collisions.

### c. Whether Dr. Barczyk's Testimony Would Be Cumulative

Finally, the Court addresses whether Dr. Barczyk's testimony should be excluded as cumulative. Federal Rule of Evidence 403 provides that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Without the benefit of hearing the evidence that plaintiff will have introduced at trial, the Court finds that it would be premature to exclude Dr. Barczyk's testimony as cumulative at this juncture. *Cf. Cortez v. Lamorak Ins. Co.*, No. 20-cv-2389, 2022 WL 2829051, at *1 (E.D. La. July 20, 2022) (Vance, J.) (denying defendants' pretrial motion *in limine* on cumulativeness grounds as premature). Accordingly, the Court will overrule defendants' objection to Dr. Barczyk's testimony on this basis without prejudice to defendants' right to reraise this objection at trial.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion *in limine* filed by defendants is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to Dr. Barczyk's opinions on medical causation, and Dr. Barczyk's opinions related to medical causation are **EXCLUDED**. The motion is otherwise **DENIED** as stated herein.

New Orleans, Louisiana, May 20, 2025.

                                          **LANCE M. AFRICK**
                           **UNITED STATES DISTRICT JUDGE**